The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon, counsel. This is case number 4-24-0936. Board of Trustees of Illinois State University versus Illinois Educational Labor Relations Board and AFSCME. Before we begin with arguments, I'd like to ask counsel for their appearances. First for the appellant. Jim Powers on behalf of Illinois State University. All right. And then for appellees, Illinois Educational Labor Relations Board. Megan Brown for the Illinois Educational Labor Relations Board, your honor. And for AFSCME. Melissa Auerbach for AFSCME Council 31. Okay, thank you. Mr. Powers, you may proceed with your argument. Thank you. Good afternoon. My name is Jim Powers and I represent the Board of Trustees of Illinois State University in this matter. There are two main questions involved in this appeal. First, what is the proper interpretation of the supervisory definition found in Section 2G of the Illinois Educational Labor Relations Act? Second, are SNACBAR supervisors truly supervisors within the meaning of Section 2G based on their authority over unionized SNACBAR attendants as well as over 300 non-bargaining unit student workers? The answer to these questions will dictate whether the university can trust its SNACBAR supervisors to adequately supervise the 300 plus subordinate employees who work at the university's various food venues. As for the first point, the university wishes to clarify that it is not claiming that the Illinois Educational Labor Relations Board or this court can never alter their interpretation of Section 2G. What the university maintains is that to do so, the court and agency would have to first logically find that their original interpretation was wrong. This is because the cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. So once an agency or court declares what a statute means, that meaning presumably doesn't change over time. The interpretation remains the interpretation unless or until a reviewing court or the agency itself says the original interpretation was wrong. In this case, this court and the IELRB already declared back in 1989 and 1988, respectively, that the General Assembly never intended for supervisory authority to apply only when an individual supervises subordinates within the supervisor's same bargaining unit. In other words, this court and the IELRB held that supervisory authority indeed counts, even for those subordinates who don't belong to the proposed bargaining unit to which a supervisor will be added. Significantly, the IELRB in this case never claimed that either its or this court's prior interpretations were wrong. Rather, the IELRB has attempted to draw a very fine line between preserving its original interpretation while avoiding its application to the facts of this case. With all due respect to the IELRB, that's where its approach makes no logical sense. Instead of simply arguing that it and this court got it wrong back in 1988, the IELRB essentially claims it got it right, but only for a specific subset of employees like elementary school principals and university department chairs. As explained in the university's briefs, however, nothing in the plain language of Section 2G or this court's 1989 decision calls for such a distinction. Again, where the cardinal rule of statutory construction is to give effect to the legislative intent, it seems bizarre to say the least that the General Assembly somehow intended to treat two groups of employees differently with respect to 2G when there is nothing in the plain language of the act that supports such an intent. Moreover, drawing such a distinction between salaried and hourly employees makes no practical sense when one considers the nature of work performed by hourly and salaried employees. Although the IELRB's interpretation would actually make it easier, ironically enough, for employers to prove that salaried employees are supervisors, that's not where supervisory authority is most needed. The university submits that constant monitoring and supervision is critical in the context of hourly employees as opposed to salaried employees, who often are provided with longer-term projects that need less minute-to-minute observation. Yet the board's interpretation would quixotically make it more difficult. to prove supervisory authority for those hourly employed groups for whom supervision is the most critical. Finally, the respondents' reliance on the recent legislative changes to several definitions in the IELRA actually supports this court's original interpretation. For if the legislature truly intended to overrule that 1989 interpretation, it could have easily done so by simply modifying Section 2G. The fact that it did not do so, but instead modified several other sections of the act, with specific references to Chicago elementary school principals, supports the conclusion that the legislature is comfortable with the IELRB's historic interpretation of 2G. In sum, the university requests that this court uphold its original 1989 interpretation of 2G, which found that supervisory authority over non-bargaining unit personnel indeed counts for purposes of deciding one's supervisory status. As for the second point, a finding of supervisory status becomes relatively easy when one considers the snack bar supervisor's authority over the 300-plus student workers along with the unionized snack bar attendants. In that respect, the snack bar supervisors in this case satisfy all three prongs of the test for supervisory status. First, the board's own ALJ found at page 6 of his decision that snack bar supervisors can and do issue written infraction forms to student workers, the accumulation of which can lead to serious discipline, including termination. Notwithstanding the board's attempt to argue around that finding, the undisputed record evidence demonstrates that student infraction forms are indeed discipline, based on how the IELRB itself has defined it. That's because student infraction forms can and do form the basis for future disciplinary actions. Indeed, the board has previously found that things not considered formal discipline can still be considered discipline for Section 2G purposes, again, as long as they form the basis for future disciplinary actions. As explained in the university's reply brief, the IELRB has over the years found a host of identical types of informal disciplinary actions to qualify as discipline, including, for example, things called constructive contacts or things called personal incident reports. In reality, that's all student infraction forms really are. It's a type of written reprimand that can lead to future more serious discipline if a snack bar supervisor has issued enough of them. As for independent judgment, the board erroneously claimed in its response brief that supervisors exercise no discretion when issuing student infraction forms because they allegedly are just figuratively reporting the facts. That is unsupported by the record evidence. As explained in the university's briefs, all snack bar supervisors possess the authority to decide in the first instance whether to issue a student infraction form. For example, if a student is a few seconds or minutes tardy, all witnesses confirm that the supervisor has total discretion to simply ignore the student worker's misconduct by giving him or her a proverbial free pass. That figurative go-no-go discretion without strict guidelines as to when to exercise the discretion is the epitome of independent judgment. In other words, snack bar supervisors are not robots who must blindly report any and all misconduct that they observe. They can think for themselves when deciding when and when not to issue a student infraction. As a result, the court should conclude that all snack bar supervisors exercise disciplinary authority with independent judgment with respect to student workers. A similar conclusion should be reached for snack bar attendance where the record is undisputed that supervisors can and have recommended termination for probationary employees. As for assignment and direction, the ALJ again confirmed at page six of his decision that all four snack bar supervisors devote time to observing, monitoring, training, and correcting student workers. Contrary to the respondents, this supervisory authority by itself is enough to qualify an individual as a supervisor, especially whereas here the supervisors exercise independent judgment when it comes to deciding when and how to assign the duties to those subordinate employees. While the board's brief focused most of its attention on the supervisor's daily assignments of subordinates to certain workstations, the board largely overlooked the supervisor's very significant authority for calling additional student workers into work and sending surplus student workers home, all of which obviously affect the amount of pay that student workers receive in their paychecks. The undisputed record evidence establishes that snack bar supervisors make these decisions without guidance or instruction from superior officials. Again, this is the epitome of independent judgment, such that the court should conclude that all supervisors perform the supervisory duties of assignment and direction with independent judgment, which of course leaves the third prong of the test for supervisory status, which involves the performance of duties for a preponderance of one's employment time. As far as the university can tell, neither respondent realistically challenged the fact that most snack bar supervisors spend more than 50% of their workday monitoring, observing, and correcting the jobs of their subordinate student workers and snack bar attendants. Granted, AFSCME claimed on page 31 of its brief that supervisors don't monitor and inspect work for preponderance of their workday. However, that single sentence without citation contradicts the ALJ-specific factual findings at pages eight and nine of his decision that at least two out of the four supervisors indeed spend over 50% of their workday monitoring and inspecting their student workers. And the university's briefs provide specific record citations for why the same conclusion should be reached for the other two snack bar supervisors. As for the board, it concedes on page 46 of its brief that supervisors, quote, could spend much of a given day overseeing and monitoring student employees, end quote. At the same time, however, the board claims that such monitoring and inspection work does not qualify as supervisory authority because there supposedly is no evidence that the authority is accompanied by the ability to impact a subordinate's terms and conditions of employment in other areas. As explained in the university's reply brief, however, the university maintains that such an interpretation of 2G is erroneous because it runs counter to the use of the disjunctive or in that section. The act does not require proof of multiple indicia of supervisory authority. One indicia in the form of assigning work should be enough by itself, but even if that legal principle is correct, the university submits that snack bar supervisors can indeed back up their monitoring and correction with student infraction forms or recommendations for termination involving snack bar attendance. In sum, the university requests that the court reverse the IELRB by finding that all four snack bar supervisors qualify as supervisors within the meaning of section 2G because they discipline and assign and direct the work of their subordinates with the requisite independent judgment for a preponderance of their employment time. By extension, the university requests that the court reverse the IELRB certification and exclude the four snack bar supervisors from the underlying AFSCME bargaining unit. Doing otherwise will compromise the university's ability to ensure that subordinate workers at its food venues are adequately and correctly performing  Thank you. You'll have time in rebuttal. It's my understanding that Applees are splitting their time 10 minutes and 10 minutes. Ms. Brown, you may proceed with your argument. Thank you, Your Honor. Good afternoon and may it please the court. I am Assistant Attorney General Megan Brown and I represent the state respondent of the Illinois Educational Labor Relations Board. I will primarily argue that this court should honor the plain language of Section 2G of the Act by considering only whether snack bar supervisors exercise authority over other employees within the appropriate bargaining unit. Co-counsel for the union, Ms. Auerbach, plans to address the argument that the board did not clearly err in determining that the university failed to establish that snack bar supervisors are supervisors as defined by the Act, although I am happy to take this court's fact-specific questions as well. This case should begin and end with the plain language of the Act. A supervisor, as defined by the Act, is an individual who has authority in the interest of an employer to materially affect the conditions of employment of other employees within the appropriate bargaining unit because there is no meaningful argument that snack bar supervisors spend a preponderance of their time in the appropriate bargaining unit here. This court should affirm the decision of the board and this court's decision in Chicago Principals Association should not bar this court from honoring the plain language of the Act. When engaging in statutory interpretation, the goal is to give effect to the legislature's intent and the best indicator of intent of the legislature is the statutory language given its plain meaning. Here, there are seven words in this statute that must be given their plain meaning. Those words are other employees within the appropriate bargaining unit and the only retail dining employees in this case that are organized for collective bargaining are the snack bar attendants. Thus, per the plain language of the statute, this court need only consider the relationship of snack bar supervisors to snack bar attendants. The board's reading of the briefs in this case shows that snack bar supervisors do not spend a preponderance of their time exercising supervisory authority over snack bar attendants. The ALJ found that the snack bar supervisors spent only 10% of their time exercising any sort of overseeing of snack bar attendants and so there cannot be any reasonable argument in this case that when simply considering snack bar attendants, snack bar supervisors should be considered supervisors as defined by the act. The only wrinkle in this plain language reading of the statute is Chicago Principals Association, a 35-year-old case that has either been legislatively overruled or is easily distinguishable from the facts here. Chicago Principals Association held that the elementary school principals in that case were not educational employees under Section 2B of the Act and were therefore prevented from collective bargaining. In 2023, the General Assembly amended that statute. Principals involved in the CPA were educational employees under Section 2B of the Act. And then floor debates reveal that allowing the principals to collectively bargain was the purpose of the amendments to that Act and then the principals were allowed to form their own collective bargaining unit. In the opening argument here today, the University argued that because the General Assembly did not specifically argue that, did not change, excuse me, did not change the language of Section 2G that this amendment to the statute has no effect on Chicago Principals Association but respectfully we disagree. The General Assembly could have changed the plain language of Section 2G to reflect the University's understanding of the reading of that statute which is to read the words other employees within the appropriate bargaining unit out of the Act but it preserved those words in the Act while explicitly allowing the principals involved in that case to organize. So, it did not be determinative in this case that Section 2G was not amended. The plain language of that statute of that section should show that this Court and the Board need only consider whether the snack bar supervisors supervise the snack bar attendance which they do not. Additionally, even if this Court does not believe that the Chicago Principals Association case has been legislatively overruled this Court can and should depart from this precedent because these cases are distinguishable. Key to that Court's decision in Chicago Principals Association was the idea that Section 2G of the Act did not condone individuals who devote a majority of their time exercising labor-related supervisory powers to organize for collective bargaining so long as their organization was separate from those they supervised. In other words, the decision in Chicago Principals Association was about the fact that the Court was concerned that these principals were organizing separately from the teachers who they seemed to materially affect the conditions of employment of. That is not at all a concern in this case. Snack bar supervisors are not seeking to make their own collective bargaining group here separate from other retail dining employees. They are instead seeking to join an existing bargaining unit that contains the only other organized employees within retail dining at the University, the snack bar attendants. And with regard to student workers, student workers aren't in a separate organization at all. They're not organized for collective bargaining whatsoever. And this is important for a couple of reasons. The reason for Section 2G for the supervisory exclusion here is to avoid the problem of divided loyalties as, to his credit, the Council for the University described. But there can be no divided loyalties here because the snack bar supervisors do not spend a preponderance of their time supervising the snack bar attendants. And even if they did supervise the student workers, those students wouldn't be involved in the union or in collective bargaining. So there would be no divided loyalty there. There's other reasons why this Court should pay special attention to the language of the statute. The Illinois Public Labor Relations Act and the Illinois Educational Labor Relations Act contain different language in the section. And according to the Illinois Supreme Court's case in Compton, when language in similar sections of those two statutes are different, that should be given separate, excuse me, that should be given special attention. And because this language is unique to the Educational Labor Relations Act, it certainly should not be read out of the statute. It should be given special effect. Finally, the Board also discussed in its opinion below that the principles in the Chicago Principals Association and the snack bar supervisors here couldn't be more different in terms of the indicia of supervisory authority. The principles in Chicago Principals Association had the ability to effectively recommend special assignments for  layoffs, or whether teachers could not be laid off, discipline, and even leaving up to termination. And the responsibilities that snack bar supervisors have over snack bar attendants in this case just simply do not measure up to that high standard. Therefore, this court should give full effect to all the words within section 2G of the Act and consider only whether snack bar supervisors exercise supervisory authority over snack bar attendants. This court need not wade into the issue of whether snack bar supervisors exercise supervisory authority over student workers. I wanted to address a couple of the arguments that my friend on the other side had. Specifically, he mentioned that the Illinois Labor Relations Board did not, was only distinguishing this case based off of the characteristics of the employees in this case versus Chicago Principals Association. We don't find it to be true. I direct this court's attention to page C200 of the record in which the statement of the board was that there were three reasons for departing from, for deciding that the snack bar supervisors were not supervisors here. One of which was the clear wording of section 2G to limit the inquiry of the board to supervisory authority over other employees within the unit. The court, the board also credited the tenuous reliability of the Chicago of the snack bar supervisors from the kinds of employees in those other pieces. And then additionally, I, I wanted to address an argument from the reply brief of the university here, which is that the university suggested that this court must remand this case because the board did not fully explain its reasoning for deciding that snack bar supervisors have authority over student workers. I did again want to direct this court's attention to page C201 of the record. The board did find that the record does not indicate that the petition for employees exercise supervisory authority over students and we don't think that the this court can rely on the record to affirm its decision. And with that said, excuse me for going over,  we request that this court affirm the decision of the board. Thank you very much. Thank you, Ms. Brown. Ms. Auerbach? Thank you, Your Honor. I represent AFSCME, respond to AFSCME Council 31. May it please the court, the snack bar and sandwich shop. At these venues, no frontline workers spend their time simply standing or walking around observing or  other employees. Rather, for these frontline workers, it is all hands on deck with the snack bar supervisors spending most of their time working alongside the snack bar attendants and student workers to perform the everyday tasks of making sandwiches and drinks, staffing the register and wiping down counters. The snack bar supervisors do not exercise any of the statutory indicia of supervisory authority with the consistent use of  judgment and therefore do not spend preponderance of their time exercising supervisory authority. All of the frontline workers report directly to  The snack bar job descriptions clearly identify each attendant supervisor as an  and the undisputed testimony confirmed that snack bar attendants report directly to  who evaluate the attendance performance. The snack bar supervisors also do not evaluate student workers. Thus the snack bar supervisors have no subordinate employees. Rather the snack bar attendants and the snack bar supervisors both function as lead workers with respect to student workers. The job descriptions of the snack bar attendants who are already represented by AFSCME state that the attendants quote supervise student employees and assign daily tasks as needed. Report any absences or problems to the administrator or student manager. Ensure that all workers assigned are properly trained to perform the tasks they are assigned to complete. That's in the record starting at E218. Most of the snack bar attendants perform these duties at the two busier venues. The snack bar supervisors do not exercise supervisory authority to assign work to snack bar attendants or student workers. Working at a station making drinks rather than making sandwiches does not alter an employee's terms and conditions of  It is not comparable to assigning an English class as opposed to a biology class. It does not  the consistent choice between two or more significant courses of action and therefore does not involve the use of independent judgment as required under the Supreme Court's decision. The snack bar supervisors monitor the venue so they know when they themselves need to bring supplies to a work station and when it makes sense to ask another worker to shift from     insufficient to establish supervisory authority because the snack bar supervisors do not possess discretion to affect the terms and conditions of employment of either snack bar attendants or student workers in areas such as discipline, transfer, hire or promotion as discussed in this court's decision versus labor relations board 2011 Illinois 4th 090966. The snack bar supervisors have no role in disciplining or recommending discipline of snack bar attendants. Rather like any employee they may submit a   an investigation. The snack bar supervisors have no role in disciplining or recommending discipline of student workers. It is undisputed that three of the four snack bar supervisors have never been sent to training on student worker discipline. The task of completing infraction forms primarily to document that a student worker missed a  was tardy or had a cash register discrepancy is a routine report of facts given to an administrator to pass on to human resources. And the snack bar supervisors do not make disciplinary recommendations. Yes. If I can interrupt. What about opposing counsel argue that there is some discretion used in whether or not to exercise the I forgot the name of it. The report they are sending up to the administrator. It is no different than making a decision whether to submit a report of  The testimony of the snack bar supervisors was that they have been told if a student is late or tardy they should fill out one of these infraction reports. They said that is primarily what they do. Those are simple reports of facts that someone else can submit. Contrary to what counsel stated,  university procedures specifically state that an infraction report is not part of the disciplinary process. There is a formal disciplinary process that starts with a warning and goes on to suspension and termination. The infraction report is just like any other report of facts that goes on in the snack bar supervisors by submitting that do not participate in recommending any discipline. There is no evidence that the snack bar supervisors recommend termination. The employer presented one witness who presented vague testimony on one proposed recommendation of a discipline. She named administrators she submitted a report of facts to and none of them were called as witnesses to testify. She did not  testimony to what she said. No other witnesses were called to say what they did. On the other instance, an email was put in evidence that she admitted was just a report of facts and no administrator was presented to testify what happened with that report of facts and whether there was an independent investigation or how any termination was decided upon. It was insufficient evidence to carry the employer's opinion. The snack bar supervisors with approval from administrators may occasionally ask student workers for volunteers to leave a venue early if it's quiet or ask a student to put a message in a group chat seeking volunteers to pick up extra shifts. That was the only testimony from the snack bar supervisors as to any ability to change staffing levels. They cannot require anyone to come in to pick up an extra shift. They can just seek volunteers with no evidence they can order a student to come in. Since the snack bar supervisors do not   statutory dish of supervisory authority with the consistent use of independent judgment, which means having some effect on conditions of employment and a choice between two significant courses of action rather than between routine choices such as making cold drinks or hot drinks, they do not exercise time exercising supervisory authority. The board did not clearly err in finding that snack bar supervisors are not supervisors under the act but rather are educational employees with the right to be represented for collective bargaining. With respect to the first point argued by Ms. Rowe,   distinguish a prior board decision so long as it gives a rational reason for it and its decision is not arbitrary or  For those reasons, the court should defer to the board's finding that the relevant inquiry is the snack bar supervisors authority with respect to  board's   board should not be deprived of their right to join a bargaining unit with other hourly employees. If the court has no further questions, ask me to request that the court affirm the decision in order of the board. I have a question for Ms.  I'm wondering if we could focus on this issue for just a minute or this suggestion. In the reply brief at page 7, opposing counsel writes at the very least the court should remand the matter to    the        finding that the record does not indicate that the petition for employees exercise supervisory authority over student workers.  this court has the  in front of it and because this court can affirm the record,  is not required here. The decision cited by the university is a little bit different than what's going on here. In those cases, the board crafted a new rule that it didn't fully explain and departed from prior board precedence. That is not what's happening with regard to the student workers in this case, the factual reasons why supervisors do not exercise supervisory authority over student workers. Those reasons are contained in the record and that's what we believe.   record does not indicate that the supervisors exercise supervisory authority over student workers. This court has discretion to remand but we don't think it's necessary here. Would it be helpful at all to ask the IELRB to clarify its reasoning with regard to this preponderance of time element or is your argument that that is out of the question or not needed for some reason? With respect to the preponderance of time element, I think that's contained in the finding that the record doesn't indicate that the petition for  remand       we think that there's not enough supervisory authority but our position is that this court need only consider the snack bar attendance and it's an easy case under section 2G. Thank you for the clarification. Mr. Powers, rebuttal on page 5 of the ed board's decision, they say that the record does not indicate that the petition for employees exercise supervisory authority over student workers for the reasons discussed below and then for the next two to three pages there's no discussion about that, about what it is about the student workers and the supervisory authority over them that defeats the supervisory test. Likewise, the administrative law judge never even reached that  He stopped his analysis right at the snack bar attendance and ignored this court's decision from 1989 and just didn't even analyze any  We would  the ed board really didn't address this issue and for right or wrong is allowing appellate counsel to make the arguments for it. We would also agree that you do have the discretion to remand. We would also agree that I think the record is pretty clear that these    the ed board. If this is a post hoc rationalization that is an option that you certainly have is to remand it. I'm being redundant and I apologize if I am. How do you respond to Ms. Brown's argument that your position on the  of 2G reads certain language out of the statute? And she read to us at the very beginning what those words were. How do you respond to that? I would respond exactly how this court and how the ed board responded to it back in 1988 and 1989. If the legislature truly did                       allow supervisors to form in their own unit, they probably would have adopted language similar to what is found in the Illinois public labor relations act. The IPLRA does allow supervisors to organize in certain limited circumstances. The legislature obviously knows how and at the time knew how to allow supervisors to organize if that's what they wanted to do. Here, I agree with the fourth district's  from 1989. It's a very odd way of declaring that supervisors could form their own  units by the way  wanted    see the rest of my time unless any other judges have any questions for me. I don't see any other questions. Thank you, Mr. Powers. Thank you, all, counsel. The court will take the case under advisement and will issue a written assertion.